CITY OF ANN ARBOR *v.* GOODSPEED REAL ESTATE CO.

1. ADVERSE POSSESSION—LIMITATIONS—STREETS — MUNICIPAL CORPORATIONS—IDENTITY OF LOCUS.

Defendants' adverse possession during a long period of time of a portion of the sidewalk in a city for a cellarway, created no rights to a different portion of the street which it later attempted to occupy with a new stairway in a building that subsequently replaced the original one.[1]

2. SAME—PRESCRIPTION—CITIES.

Act No. 46, Pub. Acts 1907, providing that no rights as against the public shall be acquired by reason of the occupancy or use of any public highway, street, etc., in any township, village, or city of the State, whether such occu-

[1]On rights acquired, as against the public by adverse possession highway or city street, see note in. 18 L. R. A. 146.

pation or use be adverse or not, and the charter of said municipality enacted in 1867 containing similar provisions, prevented defendant from obtaining prescriptive rights after 1867, and, prior to that date, the evidence failed to show hostile use for a sufficiently long period of time.[1]

3. SAME—ESTOPPEL—MUNICIPAL CORPORATIONS.

In view of a city ordinance vesting in the board of public works authority to issue permits to occupy any portion of the street, defendant could not claim the right to possession of part of the street, by virtue of a permit that its predecessor in title secured from the city council to construct a cellarway, especially when he never acted upon it and did not convey his rights to the defendant, and the board of public works took no action in relation thereto.

Appeal from Washtenaw; Kinne, J. Submitted October 14, 1915. (Docket No. 83.) Decided December 21, 1915.

Bill by the city of Ann Arbor against the Goodspeed Real Estate Company and others for an injunction. From a decree for complainant, defendants appeal. Affirmed.

*Frank B. De Vine* (*A. F. Freeman*, of counsel), for complainant.

*E. B. Norris* and *J. W. Dwyer* (*Stuart E. Knappen*, of counsel), for defendants.

STONE, J. The bill of complaint in this cause was filed to restrain the defendants from removing a portion of the sidewalk at the southwest corner of Main and West Huron streets, in the city of Ann Arbor, and from the construction by defendants of a stairway within the line of said West Huron street leading to the basement of the building owned by the defendants, and known as the First National Bank Building, which

---

[1] An encroachment on public street or alley by occupier of abutting property for storage or other similar purposes as basis of adverse possession, see note in 36 L. R. A. (N. S.) 1056.

building fronts on Main street, with its northern side abutting on the south side of said Huron street and even with the lot line. The present building was constructed in the year 1907 by Frank P. Glazier, and the premises were purchased by the defendants in the fall of 1908.

The defendants claim a twofold right to remove said sidewalk and to construct said stairway in the public street north of said building, commencing at the northeast corner thereof:

*First.* They claim that for a period of 50 years and upwards, just prior to the construction of the present building, an open stairway leading to the basement of the store building then standing thereat had existed, and was owned, used, and occupied by the owner of the said store building, and that said stairway was, and continued for more than 50 years, appurtenant to the said store building and to the land upon which said store building then stood and where said defendants' building now stands, and that by reason thereof said stairway and stairway rights became and were appurtenant to said lands, and passed to the purchaser of said store building and land, and by good and lawful conveyance came to these defendants. At the hearing upon this branch of the case the defendants claimed their rights to the stairway by adverse possession, and that they had had continuous and exclusive possession thereof.

*Second.* The defendants also claimed that the common council of said city, at a session of that body held on the 30th day of August, 1907, granted the petition of Frank P. Glazier, praying that he be permitted to go from the Huron street side of said building to the basement thereof by a stairway leading from the outside, the same to be inclosed by ornamental railing, and that by reason of the granting of said petition of the said Glazier the city is estopped from claiming any relief under its bill of complaint.

The case, being at issue, was heard in open court. It appeared upon the hearing of the cause that one F. J. D. Crane purchased the premises on the southwest

corner of Main and Huron streets, in said city, in the year 1844, and that he erected a three-story building thereon in the year 1845. This building, like the present one, fronted on Main street. It remained upon this corner until torn down in 1906 to make way for the present building. When this building was erected in 1845 it was constructed with two outside stairways on the north or Huron street side of the building, one going up to the second floor, and one or more down to the basement. The stairway to the second floor started 4 to 6 feet west of the front of the building, and ascended in a westerly direction. It was 3 to 4 feet wide, and encroached upon Huron street by that much. The front stairway to the basement (the one about which we are concerned) was directly under the stairway leading to the second floor. It started from 15 to 20 feet back from the front of the building, and went down easterly, towards the front of the store, so that the opening in the sidewalk for this stairway was 15 or 20 feet west of Main street. While the testimony is clear that the stairway leading to the second floor continued to be used during the life of the old building, it is not so clear as to the continuance of the front stairway leading to the basement. Two witnesses who had early acquaintance with the premises testified on behalf of defendants. One was Col. Henry S. Dean. He was employed in this store in 1849. He was later absent some years, returning after the close of the War of the Rebellion in 1865. He is not certain whether there was any stairway leading into the basement under the stairs going up after his return, but is under the impression that there was. He thinks the first stairway was 25 or 30 feet back from the line of Main street.

H. J. Brown, another witness and old resident, was sworn, and testified that he had lived in Ann Arbor since 1879, and was in the drug business on the corner

of Main and Huron streets, and remained there until 1906. He was asked these questions upon direct examination:

"*Q.* Was there an outside cellarway entrance to this store?

"*A.* There had been one there some time. It was used as a coalpit or ashpit while I was there. It was never open while I was there, except once a year it was opened to take out ashes. There was no stairway there.

"*Q.* The steps were out of use?

"*A.* Yes; and it was covered over.

"*Q.* A wooden covering?

"*A.* I think it was wood; I am not sure about that whether it was wood or stone. * * *

"*Q.* Where was this ashpit or cellarway located?

"*A.* It was— I should think it was perhaps 10 or 15 feet back from the corner of the building.

"*Q.* Right under this stairway that went up to the second floor?

"*A.* Yes. * * *

"*Q.* There was a stairway from the inside of the building to the basement?

"*A.* Yes; in the back end of the store.

"*Q.* So that you could go into the basement from the inside of the store?

"*A.* Yes."

On cross-examination he testified as follows:

"*Q.* You were in that building from 1879 to 1906?

"*A.* Yes.

"*Q.* Until the building was sold?

"*A.* Yes.

"*Q.* Until that building was torn down and this building was constructed that is there now?

"*A.* Yes; I was notified to get out. They were contemplating tearing down the building.

"*Q.* And during all that time there was no outside stairway to that building to the basement?

"*A.* No.

"*Q.* Whatever openings there had been were closed, and they were used as places to store coal, and so forth?

"*A.* Yes."

This witness also testified that about 1884 or 1885 he permitted an Italian to go under the stairway leading to the second story where he could go to get out of the storm, and that it was so used off and on, from that time until he moved out of the building. It further appeared that in 1867 the charter of the city contained the following provision:

"No person shall be deemed to have gained any title as against the city by lapse of time, to any street, lane, alley, common or public square heretofore laid out or platted by the proprietors of said city, or any part thereof, by reason of any encroachment or inclosure of the same."

It also appeared that on November 4, 1895, an ordinance was passed by the common council of the city of Ann Arbor providing as follows:

"Sec. 1. It shall be unlawful for any person, firm or corporation, having a permanent location in this city that is adjacent to or abutting upon any sidewalk or street or other public place, to build or erect any stairway leading upwards from any sidewalk, or any sidewalk leading down to any area or basement so as to encroach upon the width of the sidewalk or street.

"Sec. 2. The board of public works shall not give a permit to any person, firm or corporation to make any excavation in any street, alley or other public place, or tear up or remove any sidewalk, pavement or street surface for the purpose of erecting or building any stairway prohibited in section one of this ordinance."

The legislature of this State, in 1907, by Act No. 46 of the Public Acts of that session, passed the following act, entitled "An act in relation to acquiring title to real estate by adverse possession:"

"Sec. 1. Hereafter no rights as against the public shall be acquired by any person, persons, firm, association, copartnership, joint stock company or corporation by reason of the occupation or use of any public highway, street or alley, or of any public grounds, or any part or portion thereof, in any township, village

or city in this State, whether such occupation or use be adverse or otherwise.

"Sec. 2. All acts or parts of acts in any wise inconsistent with or contravening any of the provisions of this act are hereby repealed.

"This act is ordered to take immediate effect. Approved April 17, 1907."

It appeared upon the hearing of the case that on August 30, 1907, Frank P. Glazier, while engaged in the erection of the present building, presented to the common council a petition as follows:

"To THE HONORABLE COMMON COUNCIL OF THE CITY OF ANN ARBOR.

*"Gentlemen:*

"Your petitioner, Frank P. Glazier, respectfully represents to your honorable body that he is the owner of the new building being erected on the corner of Huron and Main streets, in the city of Ann Arbor, and that, in order to get to the pressroom in the basement of the building, it will be necessary to have a stairway leading from the outside down to the pressroom, and will be inclosed by ornamental railing.

"Therefore your petitioner respectfully asks that your honorable body permit him to go from the Huron street side of said building to the pressroom by means of a stairway, not to exceed three feet, to be erected when permission is granted to your petitioner by this honorable body.

"Respectfully submitted,

"FRANK P. GLAZIER."

The petition was granted by unanimous vote of the members of the council. It is not claimed that any permission was obtained from the board of public works to make said proposed stairway. The evidence is undisputed that Mr. Glazier did not construct the stairway at all, but that the sidewalk was built entirely from Main street west along the side of said building. It does appear, however, that before the filing of the bill of complaint, the defendants, acting through D. C. Goodspeed, relied upon the permission

that had been granted to Mr. Glazier, as above stated, and they were informed by the city clerk that they could go ahead and build the stairway. Proceeding to do so, they were stopped by the injunction issued herein. Some proceedings were had both by Mr. Goodspeed and the council after the pleadings were put in in this case, which we shall not refer to.

At the close of the testimony and argument of this case, the opinion of the court was announced as follows:

"The evidence in this case tends to show that the building which stood on the corner of Main and Huron streets, in the city of Ann Arbor, was built about the year 1845. It was occupied at that time by the firm of Crane & Co., and Col. Dean worked for a year or so as clerk in their employ. At that time there seems to have been two stairways leading down from Huron street into the basement of the building. How long the stairways continued to be used for entrance to the basement does not appear from the testimony, and I see no reason to indulge in a presumption of continuance in regard thereto. The testimony of Mr. Brown, who occupied this corner in the year 1879, shows that at the time of his occupancy these stairways had been boarded up, one of which he used as an ashpit, putting therein the ashes from the furnace in the store, and opening the same once a year and removing the ashes; and the testimony would seem to indicate that the other was used, in part at least, for putting coal down into the cellar. There is no evidence in the case of when the building was first used in this manner, or when the stairways were first used in this manner, and I see no reason, as before stated, for indulging in a presumption of continuance for the time necessary to gain title by adverse possession, nor do I see in this case any evidence from which I am compelled to draw the conclusion that such use of the stairway was adverse or hostile. It is quite possible that some arrangement existed between the city of Ann Arbor, or the village of Ann Arbor, at the time these stairways were constructed, and the owners of the store. My belief in this regard is all the stronger be-

cause the evidence shows beyond controversy that, when Mr. Glazier acquired the property, he prepared plans for the erection of the store as it exists at the present time, with the possible exception that he intended to put a stairway into the basement; but, instead of relying upon any adverse and hostile possession, he immediately applied to the common council of the city of Ann Arbor for a permit to put a stairway in. After the title of the property passed from Mr. Glazier to his representative in bankruptcy, the plan of putting in the stairway seems to have been forever abandoned, and the sidewalk was built over the place in which it was designed to place a stairway, and the property was sold under those circumstances to the defendants in this case. * * * Mr. Glazier applied for permission, and, when it was given to him, he did not exercise the permission. I understood they cut out a place in the steel to put in a stairway. Under those circumstances it does seem to me there was no acceptance of the permission given by the city of Ann Arbor, if the common council was the proper body to give permission, which perhaps may be given a question of doubt, and certainly the permission did not run with the land and continue forever. For these reasons it seems to me the relief should be granted as prayed for in the bill of complaint."

A careful reading of this entire record satisfies us that the trial court reached the correct conclusion. There are a number of reasons why the defendant cannot prevail here upon the ground of prescriptive right, or right of adverse possession. In the first place, the evidence does not show that there was ever any excavation in the sidewalk at the corner of Main and Huron streets where it is now proposed to open one, but that the opening, when it did exist, was back from Main street from 15 to 25 feet. There is no evidence of adverse possession of the *locus in quo.*

We are not satisfied that there was any such continuous, uninterrupted, hostile, open, and notorious possession as would constitute adverse possession, but we think the contrary appears. It does not appear,

therefore, that title by adverse possession had been acquired prior to 1867. Since that time defendants are in no position to claim that they, or their predecessors, have acquired title by adverse possession.

In the light of the legislation, local and State, we do not think it can be successfully claimed that the complainant is estopped from obtaining relief in this case. The only permission granted was by the common council in the face of the ordinance which gave this power to the board of public works, and it was a permission given personally to Mr. Glazier, which has never been acted upon, and cannot be said to have been conveyed by him to the present owners. No rights, appurtenant or otherwise, can be claimed to have been obtained under the circumstances by that permit.

The decree of the circuit court is therefore affirmed, with costs to the complainant.

BROOKE, C. J., and PERSON, KUHN, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.